Filed 9/9/25  In re D.H. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.H., a Person Coming Under the Juvenile Court Law. | |
| | D084995 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J241912) |
| v. | |
| D.H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Richard R. Monroy, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

D.H. was charged in a juvenile court wardship petition with committing a murder at the age of 16.  He appeals from the juvenile court's order transferring him to the jurisdiction of adult criminal court under

Welfare and Institutions Code section 707.[1]  His appointed counsel filed a brief raising no arguable issues and requesting that we exercise our discretion to review the record for potential issues under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*).

We have independently reviewed the record and find no arguable issue that would result in a modification or reversal of the transfer order. Accordingly, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

*A. Family Background*

D.H. was the youngest of seven children born into a dysfunctional family in 2005.  Not long after his birth, his father beat his mother so severely that she had to be hospitalized.  D.H.'s father left the family permanently and D.H. and his siblings were placed in various foster homes. D.H. had no further relationship with his father.  D.H. and one of his brothers were removed from their first foster home because of abuse or neglect.

D.H.'s mother regained custody of the children after they had been in foster care for about a year.  She was an alcoholic and had mental health issues.  She constantly had different boyfriends and often left the seven children alone without adult supervision for days.  They sometimes had no food.  Over the years, there were numerous referrals to child protective services for general neglect, emotional abuse, physical abuse, and sexual abuse.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

2

D.H.'s mother started dating a man named Carlos. He was physically abusive to her in front of the children. D.H. and his brother A.H. were afraid of Carlos and reported that he touched them inappropriately in the shower. Carlos also tattooed two of D.H.'s older siblings with gang symbols. When Carlos was eventually deported in 2009, D.H.'s mother went to Mexico with him, leaving the children with their grandparents. D.H. was about four years old. For about three years, the grandparents provided the only stable household the children ever knew.

In 2012, D.H.'s mother returned from Mexico and took custody of her children again. For a while, they all lived in a one-room garage in Oceanside.

D.H.'s mother continued to drink alcohol, leave the children without supervision for days at a time, and have different men in and out of the house. She became aggressive when intoxicated and hit the children. She hit D.H. with her hands, a sandal, a belt, or a hanger. D.H. did not have a close relationship with her. He also reported being physically abused and bullied by older siblings.

*B. Gang Involvement*

At a young age, D.H. began spending unsupervised time in the streets and staying with friends to escape his home situation. He had two older brothers who were associated with gangs and were already in the juvenile system. At age 9 or 10, D.H. began associating with gang members. He joined the Vista Homeboys gang at age 12 and was "jumped in" on his 13th birthday.

D.H. became entrenched in the gang lifestyle and committed multiple gang-related crimes. He sold drugs and was involved in many acts of violence, including robberies, muggings, shootings, and stabbings. He started using alcohol and marijuana at age 9 and other drugs at age 13. He was

3

often in possession of a knife or gun. The gang became his "whole life" and "identity."

C. *Juvenile Record*

D.H. had behavioral issues at school, including threats, defiance, physical aggression, fighting, and harassment. At age 12, D.H. started attending school and receiving services at the Juvenile Court and Community Schools (JCCS). In August 2019, at the age of 13, D.H. was declared a ward of the court and placed in a group home for his involvement in two incidents: (1) threatening to shoot JCCS staff; and (2) assaulting someone with a knife in a gang-related confrontation. He was unusually entrenched in the gang lifestyle for such a young child.

D.H. absconded from the group home after a physical altercation with another youth and was placed at another group home in Michigan. After another youth died there, D.H. was transferred back to the group home in California in June 2020. He absconded again after a violent altercation with another youth in July 2020. He was arrested the next month after being stopped in a car with Vista Homeboys gang members in possession of marijuana. In August 2020, at the age of 14, D.H. was committed to Urban Camp for a maximum of 250 days. He was released on February 1, 2021 to live with his mother in Tijuana.

On February 25, 2021, when D.H. was 15 years old, he and four other gang members assaulted and robbed two people and attempted to take their vehicle at a Vista skatepark. D.H. was armed with a baseball bat and used it to smash the front window of the vehicle and strike one of the victims about eight times. Three days later, D.H. was arrested again after being stopped in a car with other gang members in possession of drug paraphernalia and methamphetamine.

4

In July 2021, D.H. was committed to the Healing Opportunities for Personal Empowerment (HOPE) program in a locked juvenile facility, where he received a wide variety of services, treatment, and therapy. Over time, D.H. became receptive to therapy and made progress during this HOPE commitment. He was released into the community to reside with his mother in Tijuana in March 2022.

Later the same month, D.H. violated probation by failing to reside with his mother and associating with members of the Vista Homeboys. He was committed to HOPE for another 60 days then released to his mother again on June 3, 2022.

On June 8, 2022, when D.H. was 16 years old, he and two other Vista Homeboys robbed a couple at gunpoint and took the man's skateboard. D.H. issued a gang challenge and struck the man in the face. In September 2022, D.H. was committed to the HOPE program for a minimum of 365 days.

D. *Charged Murder*

Just after midnight on June 9, 2022 (before D.H. was arrested for the skateboard robbery committed the previous day), Eleazar Herrera and two other men were drinking and talking at the bottom of some stairs in John Landes Park in Oceanside. The park was disputed territory between the Vista Homeboys and two other gangs. The men heard someone at the top of the stairs say, "Where you from?" and "Do you guys bang?" and "Vista Homeboys Gang." A person standing at the top of the stairs pulled out a gun and fired a shot at them, hitting Herrera in the chest and killing him.

That afternoon, police saw D.H. leave the home of another Vista Homeboys member who lived very close to the park. After a short vehicle chase, D.H. tried to run from the police. Witnesses saw him holding a firearm as he fled. Officers pursued him on foot and apprehended him. They

later found a loaded 9-millimeter semiautomatic firearm D.H. had abandoned in a bush during flight. Ballistics testing determined that the gun had fired a 9-millimeter casing that was recovered by police near the top of the stairs where the shooting occurred.

Two informants provided information to the police identifying D.H. as the shooter. They both reported that D.H. told them he had shot someone in the park. D.H. told them he saw three guys at the bottom of the stairs. He shot once and the gun jammed so he was unable to shoot again.

In a 2022 interview with a psychologist, D.H. said he did not regret committing the murder. He also told a probation officer he was upset and in a "bad place" on the night of the murder because a friend or fellow gang member had been killed in a car accident, and he was out looking to shoot someone. He said it was horrible what had happened.

In February 2023, while D.H. was still committed to the HOPE program for the skateboard robbery, the People filed another wardship petition charging him with the Herrera murder and alleging he was not a fit and proper subject to be dealt with under the juvenile court law.

E. *In-Custody Behavior*

D.H. had dozens of behavioral incidents while in custody in juvenile facilities between 2019 and 2024. These included fights, assaults against other youth and staff, disrespectful remarks, gang-related altercations, threats against staff, and inciting other youth to fight or assault staff.

D.H.'s behavior improved significantly during his second 2022-2023 HOPE commitment. This was the only time he received intensive therapy for such an extended period of time. From November 2022 through August 2023, he had no documented behavioral incidents. But after D.H. completed the 365-day HOPE commitment and was transferred back to East Mesa Juvenile

6

Detention Facility (East Mesa) in September 2023, he no longer received the same level of services and his behavior deteriorated again.

In March 2024, when D.H. was 18 years old, there was a story posted on his Instagram account that was directed at one of the informants against him in the murder. It said "dry snitching kinda told" and "snitch [n-word] ima pop you too." D.H. was in custody without access to Instagram at the time, but he was in contact with his brother who had access to his Instagram account. In an interview with a psychologist, D.H. did not deny making the post and said he wanted to take responsibility for it and did not want it to be anyone else's problem.

D.H. was charged in adult court with felony intimidation of a witness (Pen. Code, § 136.1) for making the Instagram threat. He was transferred from East Mesa to county jail.

On September 13, 2024, three days before the beginning of the section 707 transfer hearing, D.H. assaulted another jail inmate who was designated for protective custody.

F. *Section 707 Transfer Hearing*

The probation department prepared a 53-page report and recommendation in advance of the section 707 transfer hearing. The probation officer concluded D.H. was not appropriate for rehabilitation through juvenile court and recommended he be transferred to adult criminal court.

The juvenile court held an eight-day section 707 transfer hearing in September and October 2024. Multiple witnesses testified at the hearing regarding D.H.'s family background, juvenile record, gang involvement, prior treatment and services, capacity for growth, amenability to rehabilitation, and the charged murder.

7

The defense called 15 witnesses, including probation officers, clinicians, and others who worked with D.H. in the juvenile system, a mentor who had been meeting regularly with D.H. since he was 12 years old, a clinical psychologist who evaluated and extensively interviewed him, and three of his sisters.

Many of the clinicians who worked with D.H. in the juvenile system and the psychologist who evaluated him reported that he was intelligent, receptive to therapy, cooperative, and showed significant progress, especially during his second HOPE commitment in 2022-2023. During this second HOPE commitment, D.H. completed high school, began taking college courses, developed constructive goals, became more open and engaged, participated in individual and group therapy, encouraged other youth to participate, developed greater insight, spoke about leaving the gang, served as unit representative for meetings with probation, was selected as the first youth to participate in a new work program, and received multiple certificates for citizenship and achievement. He was one of the most successful youths in the HOPE program. Multiple defense witnesses testified that D.H. was amenable to rehabilitation in the juvenile system.

The probation officer who authored the transfer report testified for the People. She explained the reasons for her opinion that D.H. should be transferred to adult criminal court, including his criminal sophistication, the lack of time to rehabilitate him within the juvenile court's jurisdiction, his history of crimes and violence, and his gang involvement.

G. *Juvenile Court Ruling*

After the hearing, the juvenile court granted the People's transfer request in a 12-page written order. The court found by clear and convincing evidence that D.H. was not amenable to rehabilitation while under the

8

juvenile court jurisdiction. In reaching this conclusion, the court considered and analyzed each of the five criteria listed in section 707, subdivision (a)(3)(A)-(E).

With regard to the degree of criminal sophistication exhibited by D.H., the court acknowledged he had significant challenges due to his traumatic childhood. The court nevertheless found that D.H. had engaged in an "ongoing series of serious and increasingly sophisticated criminal conduct." The court noted that D.H.'s behavior in custody had resulted in new adult charges for "solicitation for murder on a witness to his pending murder case," which "demonstrates the growing level of [D.H.]'s criminal sophistication." The court also noted that D.H. had "attacked a protected custody witness, without provocation, just one week prior to the commencement" of the transfer hearing.

With regard to D.H.'s previous delinquent history, the court concluded that his "significant and extensive delinquent history carried on up to and beyond the alleged murder occurring in June of 2022." The court considered this delinquent history "in light of [D.H.]'s traumatic family and community environment." The court concluded that the mitigating facts were "insufficient given the severity of [D.H.']s crimes particularly the charged 707(b) offense of murder."

With regard to previous attempts to rehabilitate D.H., the court found that "[D.H.] was offered every rehabilitative tool the Juvenile Justice system was allowed to provide [D.H.] given the nature of his past offenses," including an Urban Camp commitment, out-of-home placement, and two separate HOPE commitments. After two lengthy custodial commitments and an extensive out-of-home placement, "[D.H.] then committed a murder and a separate serious robbery. [D.H.] was taken back into custody, but after a

9

change in his custodial setting, [D.H.] reverted to misconduct ultimately committing a new adult offense." Thus, the court found that "previous attempts by the Juvenile Justice system to rehabilitate [D.H.] were unsuccessful."

With regard to the circumstances and gravity of the offense alleged in the petition, the court found that "[D.H.] committed the murder after he armed himself with a firearm and went looking for rival gang members to kill. [D.H.] issued a gang challenge and [D.H.] fired a weapon into three unarmed males. The facts support that [D.H.] would have fired additional rounds if the weapon hadn't malfunctioned." The court concluded that this factor supported a finding of unfitness.

Finally, the court concluded that D.H. could not be rehabilitated within the juvenile system in the six years remaining before he turned 25 and its jurisdiction expired. The court found that D.H. had no bond with his biological family, his chosen family members were in custody, and some were still gang members. The court also found that although D.H. was able to make progress in therapeutic settings, he "picks and chooses when he wants to implement those skills." The court described D.H.'s recent assault on another jail inmate as "an unprovoked attack on a protected status witness" committed as an adult "for the benefit of a perceived criminal family."

DISCUSSION

Appointed appellate counsel filed a brief summarizing the facts and proceedings below, arguing no specific contentions as grounds for relief, and asking this court to review the entire record for error as mandated by *Wende, supra*, 25 Cal.3d. 436. To assist the court in its review, and in compliance with *Anders, supra*, 386 U.S. 738, counsel identified the following possible but not arguable issues: Whether the court properly found by clear and

10

convincing evidence that the prosecution had met its burden and that D.H. is not amenable to rehabilitation while under the jurisdiction of the juvenile court, and whether the juvenile court properly granted the motion to transfer D.H. to the jurisdiction of the adult criminal court.  (§ 707, subd. (a)(3); Cal. Rules of Court, rule 5.770(b).)  We invited D.H. to file a supplemental brief raising any additional contentions, but he did not do so.

We have considered the potential issues identified by D.H.'s appellate counsel and conducted an independent review of the record for other arguable issues under *Wende* and *Anders*.  Based on our review, we conclude there is no arguable issue that would result in a modification or reversal of the transfer order.  D.H. is competently represented in this appeal.  Accordingly, we affirm the order.  (*Wende, supra*, 25 Cal.3d at pp. 441–442.)

DISPOSITION

The transfer order is affirmed.


BUCHANAN, J.

WE CONCUR:


O'ROURKE, Acting P. J.


CASTILLO, J.

11